UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRI MARSH REALTY, LLC and <br> SHREVE CITY, LLC <br> *Plaintiffs* <br><br> v. <br><br> PALOMAR SPECIALTY INSURANCE <br> COMPANY <br> *Defendant* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 4:21-cv-239 |

## PLAINTIFFS' ORIGINAL COMPLAINT & JURY DEMAND

Plaintiffs TRI MARSH REALTY, LLC ("Tri Marsh") and SHREVE CITY, LLC ("Shreve City") (collectively "Plaintiffs") file this Original Complaint & Jury Demand against Defendant PALOMAR SPECIALTY INSURANCE COMPANY ("Palomar" or "Defendant") would respectfully show the following:

### Parties

1. Tri Marsh Realty, LLC is a domestic limited liability company located and operating in the State of Texas.

2. Shreve City, LLC is a foreign limited liability company located and operating in the State of Louisiana.

3. Upon information and belief Palomar is a foreign fire and casualty insurance company whose principal place of business is in La Jolla, California. Palomar is engaged in the business of insurance in Texas, operating for the purposes of accumulating monetary profit. Palomar regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Palomar may be served with process by serving its registered agent **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.**

1

## Venue & Jurisdiction

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district and the real property subject of the action is situated within this judicial district. Namely, this action concerns real properties and businesses located and operating in Magnolia, Texas. The insurance policies at issue and of which Plaintiffs are a beneficiary was to be performed within this district, and the losses under the policies (including payments to be made to Plaintiffs under the policies) were required to be made within this district. Further, investigation, including communications to and from Defendant and Plaintiffs (including telephone calls, mailings, and other communications to Plaintiffs) occurred within this district.

## Factual Background

*The Properties*

6. Tri Marsh owns and operates the commercial property located at 18535 FM 1488, Magnolia, Texas 77354 in Montgomery County, Texas (the "Tri Marsh Property").

7. The Tri Marsh Property is large shopping strip center. The buildings consist of several different businesses, including a gas station.

8. Shreve City owns and operates the commercial properties located at 1103-1297 Shreveport Barksdale Highway, Shreveport, Louisiana 71105 in Caddo Parish, Louisiana (the "Shreve City Properties").

9. The Shreve City Properties consist of multiple buildings. The breakdown of property addresses is as follows:

- 1141 Shreveport Barksdale Hwy - Guy's Academy
- 1205 Shreveport Barksdale Hwy - Daiquiri Express
- 1273 Shreveport Barksdale Hwy - Capital One Bank
- 1287 Shreveport Barksdale Hwy - Wendy's
- 1295 - 1297 Shreveport Barksdale Hwy – Ocean Dental & Mariners Finance
- 1215 Shreveport Barksdale Hwy - Dollar Tree
- 1217 Shreveport Barksdale Hwy - D-Bat
- 1219 Shreveport Barksdale Hwy - CitiTrends
- 1225 – 1229 Shreveport Barksdale Hwy - McCann Schools
- 1239 Shreveport Barksdale Hwy - Burlington Stores
- 1255 Shreveport Barksdale Hwy - US Veterans Affairs
- 1265 Shreveport Barksdale Hwy - Spirit Halloween
- 1267 Shreveport Barksdale Hwy - Sewing Shop
- 1271 Shreveport Barksdale Hwy - Sewing shop
- 1279 Shreveport Barksdale Hwy - California Nails
- 1291 Shreveport Barksdale Hwy - Goodwill Store
- 1293 Shreveport Barksdale Hwy - Big Lots

*The Policies*

10. Prior to April 25, 2020, Tri Marsh paid annual premiums, assessments, fees, surcharges, and taxes to Palomar to acquire comprehensive commercial insurance coverage for the Tri Marsh Property and the business under Palomar Policy No. CPARP-19-1030434-00 (the "Tri Marsh Policy"). The Tri Marsh Policy provides coverage for Tri Marsh's business and the Tri Marsh Property, for covered damages that occur during the Policy Period, from December 15, 2019 through December 15, 2020. In exchange for Tri Marsh's premium payment, the Tri Marsh Policy includes the following limits and coverages, in relevant part:

## DECLARATIONS

### A. LIMITS OF INSURANCE

The most we will pay for loss or damage in any one "loss occurrence" is the applicable Limit of Insurance shown below.

Limit of Insurance, any one "loss occurrence":     $15,267,920

In no event will our liability exceed this limit for any one "loss occurrence", regardless of the number of coverages, causes of loss or locations involved, and regardless of any additional coverages provided under this policy.

| | |
|---|---|
| Limit of Insurance, as respects Earthquake Shock: | Not Applicable |
| Limit of Insurance, as respects Flood: | Not Applicable |
| Limit of Insurance, Windstorm and/or Hail: | $15,267,920 |
| Limit of Insurance, Named Storm: | $15,267,920 |
| Limit of Insurance, Equipment Breakdown: | $15,267,920 |
| Limit of Insurance, All Other Perils: | $15,267,920 |

### B. COVERAGE

We provide the following coverage if it is marked with a "✓". No coverage is provided by this policy under any item unless a "✓" is inserted in the box preceding that item. Coverage is provided in accordance with the terms and conditions of this policy. Terms and conditions that apply only to individual coverage forms are set forth in those forms. This policy provides coverage on a Replacement Cost basis for Building and Contents unless Actual Cash Value is endorsed on the policy.

- ☑ Building
- ☐ Contents
- ☐ Stock
- ☐ Tenant's Improvements and Betterments
- ☑ Time Element (Loss of Business Income; Extra Expense, Rental Value; Maintenance Fees and any other time element coverages as specifically covered under this policy)

11. As evidenced by the Declarations Page, the Tri Marsh Policy provides coverage to the Tri Marsh Property's physical structure on an actual cost value basis for damages, in addition to lost business income up to $15,267,920. *See* Ex. A, Tri Marsh Policy, at Declarations Pages.

12. The Tri Marsh Policy also contains a Deductible provision that confirms coverage for damages to the interior of the Tri Marsh Property that result from wind, hail, and named windstorm damage, including damages caused by hail:

C. DEDUCTIBLES

| | |
|---|---|
| Earthquake Shock: | Not Applicable |
| Windstorm and or Hail: | 1.0% in any one loss occurrence, per building (CP 03 21 10 12) |
| Named Storm: | 1.0% in any one loss occurrence, per building (CP 03 21 10 12) |
| Equipment Breakdown: | $2,500 in any one loss occurrence (PSIC-EB-COVE 01 19) |
| All Other Perils: | Subject to a minimum per loss occurrence of $10,000 |

13. Prior to April 29, 2020, Shreve City paid annual premiums, assessments, fees, surcharges, and taxes to Palomar to acquire comprehensive commercial insurance coverage for the Shreve City Properties and the business under Palomar Policy No. CPARP-19-1025633-00 (the "Shreve City Policy"). The Shreve City Policy provides coverage for Shreve City's business and the Shreve City Properties, for covered damages that occur during the Policy Period, from November 15, 2019 through November 15, 2020. In exchange for Shreve City's premium payment, the Shreve City Policy includes the following limits and coverages, in relevant part:

| Loc / Bldg | Address | Coverages | Values |
|---|---|---|---|
| Per SOV | Per SOV on File. | Building | $21,000,000 |
| | | BPP | $0 |
| | | BI | $2,000,000 |
| | | TI/Betterments | $0 |
| | | Other Values | $0 |
| **Total Insurable Values:** | | | **$23,000,000** |

**B. COVERAGE**

We provide the following coverage if it is marked with a "✓". No coverage is provided by this policy under any item unless a "✓" is inserted in the box preceding that item. Coverage is provided in accordance with the terms and conditions of this policy. Terms and conditions that apply only to individual coverage forms are set forth in those forms. This policy provides coverage on a Replacement Cost basis for Building and Contents unless Actual Cash Value is endorsed on the policy.

- ☑ Building
- ☐ Contents
- ☐ Stock
- ☐ Tenant's Improvements and Betterments
- ☑ Time Element (Loss of Business Income; Extra Expense, Rental Value; Maintenance Fees and any other time element coverages as specifically covered under this policy)

14. As evidenced by the Declarations Page, the Shreve City Policy provides coverage to the Shreve City Properties physical structure on a replacement cost value basis for damages, in addition to lost business income up to $23,00,000. *See* Ex. B, Shreve City Policy, at Declarations Pages.

15. The Shreve City Policy also contains a Deductible provision that confirms coverage for damages to the interior of the Shreve City Properties that result from wind, hail, and named windstorm damage, including damages caused by hail:

**C. DEDUCTIBLES**

| | |
|---|---|
| Earthquake Shock: | Not Applicable |
| Windstorm and or Hail: | 1.0% in any one loss occurrence, per building (CP 03 21 10 12) |
| Named Storm: | 1.0% in any one loss occurrence, per building (CP 03 21 10 12) |
| Equipment Breakdown: | $10,000 in any one loss occurrence (PSIC-EB-COVE 01 19) |
| All Other Perils: | Subject to a minimum per loss occurrence of $10,000 |

*Plaintiffs make insurance claims for related damages*

16. On or about April 25, 2020, a hailstorm struck the Tri Marsh property causing substantial damage to the roof system, HVAC, interior, exterior, and more. As a result of the hail hitting Montgomery County and specifically the Tri Marsh Property, sizeable portions of the Tri Marsh Property's roof were compromised.

6

17. On or about April 29, 2020, a hailstorm struck the Shreve City Properties causing substantial damage to the roof systems, HVAC, windows, and exterior. The Shreve City Properties were hit by a second hailstorm on or about August 27, 2020. As a result of these hailstorms hitting Caddo Parish and specifically the Shreve City Properties, sizeable portions of the Shreve City Properties' roofs were compromised.

18. The Tri Marsh and Shreve City Properties—specifically the roofs, interiors and HVAC systems—were substantially damaged by hail and wind. Yet as devastating as the physical damage was, Plaintiffs felt fortunate to be protected by several million dollars in insurance coverage it had procured to insure the Properties from precisely this type of catastrophe. Immediately after the storms, Plaintiffs promptly filed claims with Palomar, alerting them to the extensive damages. This sense of security, borne of a pricey contractual relationship, would prove illusory as Palomar began their investigation and handling of the claims.

***Plaintiffs work hard to document its damages for Palomar but received a claim rejections.***

19. Palomar's claims-handling process resulted in a wrongful claim rejection that omitted a wealth of facts, physical evidence, obvious wind and hail damages, and meteorological data from the storm supporting Plaintiffs' claims. Palomar unreasonably pinned the loss on anything but the hail and wind, an action designed to save Palomar millions of dollars in damages to the Property and the business.

20. To this day, due to Palomar's outcome-oriented, inadequate, and haphazard investigation, Palomar has refused to fully pay for the covered damages under the Tri Marsh or Shreve City Policies.

***Plaintiffs send demand letters in compliance with the law***

21. On June 1, 2017, Governor Abbott signed House Bill 1774 into law as Section

542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of unscrupulous practices. Particularly, Section 542A.003 requires detailed, comprehensive presuit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation. When utilized properly, Section 542A should assist business consumers like Plaintiffs to avoid protracted litigation over a clear claim.

22. In compliance with Section 542A.003, Tri Marsh gave its pre-suit notice to Palomar on November 20, 2020 and Shreve City gave its pre-suit notice to Palomar on December 9, 2020. The pre-suit notices provided a comprehensive outline of Plaintiffs claims and damages, quantified its loss, and even offered to waive a formal claim for attorneys' fees if the contractual amounts were paid promptly.

23. Palomar responded to the Tri Marsh's demand on January 21, 2021 but refused to acknowledge its own wrongdoing. All conditions precedent to the filing of this lawsuit have been met by Plaintiffs.

**Count 1 – Violations of Texas Insurance Code, Section 541**

24. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

25. Palomar failed to attempt to effectuate a prompt, fair, and equitable settlement of a claims with respect to which liability has become reasonably clear, in violation of Texas Insurance Code Section 541.060 (a)(2)(A).

26. Palomar failed to adopt and implement reasonable standards for prompt

investigation of the claims arising under its policies.

27. Palomar failed to provide promptly a reasonable explanation, in relation to the facts or applicable law, for the denial of a claims, in violation of Texas Insurance Code Section 541.060 (a)(3).

28. Palomar refused to pay the claims without conducting a reasonable investigation with respect to the claims, in violation of Texas Insurance Code Section 541.060 (a)(7).

29. Palomar misrepresented the insurance policies under which it affords property coverage to Plaintiffs, by making an untrue statement of material fact, in violation of Texas Insurance Code Section 541.061 (1). Palomar misrepresented the insurance policies to Plaintiffs, by making an untrue statement of material fact, in violation of Texas Insurance Code Section 541.061 (1).

30. Palomar misrepresented the insurance policies under which it affords property coverage to Plaintiffs by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2). Defendant misrepresented the insurance policies to Plaintiffs by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2).

31. Palomar misrepresented the insurance policies under which it affords property coverage to Plaintiffs by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1). Defendant misrepresented the insurance policies to Plaintiffs by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material

fact and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1).

32. Palomar knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of Texas Insurance Code Section 541.002 (1).

### Count 2 – Violations of the Texas Insurance Code, Section 542

33. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

34. Palomar failed to acknowledge receipt of the claims in violation of Texas Insurance Code Section 542.055 (a)(1).

35. Palomar failed to timely commence investigation of the claims or to request from Plaintiffs any additional items, statements or forms that Palomar reasonably believed to be required from Plaintiffs in violation of Texas Insurance Code Section 542.055 (a)(2)-(3).

36. Palomar failed to notify Plaintiffs in writing of the acceptance or rejection of the claims not later than the 15th business day after receipt of all items, statements and forms required by Defendant in violation of Texas Insurance Code Section 542.056(a).

37. Palomar delayed payment of Plaintiffs' claims in violation of Texas Insurance Code Section 542.058(a).

38. Each of the actions described herein were done "knowingly" as that term is used in the Texas Insurance Code and were a producing cause of Plaintiffs' damages.

### Count 3 – Statutory Interest

39. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

40. Plaintiffs make claims for statutory interest penalties along with reasonable attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

### Count 4 – Breach of Contract

41. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

42. As outlined above, Palomar breached its contracts with Plaintiffs by refusing to pay for covered damages under the Policies. As a result of Palomar breach, Plaintiffs suffered legal damages.

### Count 5 – Breach of duty of good faith & fair dealing

43. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

44. Palomar, as the properties coverage insurer, had a non-delegable duty to deal fairly and in good faith with Plaintiffs in the processing of the claims. Palomar breached this duty by refusing to properly investigate and effectively denying insurance benefits. Palomar knew or should have known that there was no reasonable basis for denying or delaying the required benefits. As a result of Palomar breach of these legal duties, Plaintiffs suffered legal damages.

### Count 6 – Punitive Damages for Bad Faith

45. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

46. Defendant acted fraudulently and with malice (as that term is legally defined) in denying and delaying Plaintiffs' claims for benefits. Further, Defendant had actual, subjective

11

awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

### Count 7 – Violations of Texas Deceptive Trade Practices Act

47. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

48. The Texas Deceptive Trade Practices Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices. Defendant's violations of the Texas Insurance Code create a cause of action under the DTPA. Defendant's violations of the Texas Insurance Code, as set forth herein, specifically violate the DTPA as well. Defendant has also acted unconscionably, as that term is defined under the DTPA.

49. Each of the actions described herein were done "knowingly" as that term is used in the DTPA and were a producing cause of Plaintiffs' damages.

### Resulting Legal Damages

50. Plaintiffs are entitled to the actual damages resulting from the Defendant's violations of the law. These damages include the consequential damages to its economic welfare from the wrongful denial and delay of benefits including loss of the properties and business; and the other actual damages permitted by law. In addition, Plaintiffs are entitled to exemplary damages.

51. As a result of Defendant's acts and/or omissions, Plaintiffs have sustained damages in excess of the minimum jurisdictional limits of this Court.

52. Plaintiffs are entitled under law to the recovery of prejudgment interest at the maximum legal rate.

53. Defendant's knowing violations of the Texas Insurance Code and DTPA entitle Plaintiffs to the attorneys' fees, treble damages, and other penalties provided by law.

54. Plaintiffs are entitled to statutory interest as damages under the Texas Insurance Code 542.060(c).

55. As a result of Defendant's acts and/or omissions, Plaintiffs have sustained damages in excess of the jurisdictional limits of this Court.

56. Plaintiffs are entitled under law to the recovery of prejudgment interest at the maximum legal rate.

57. Plaintiffs are entitled to the recovery of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §38.001, Texas Insurance Code 542.060(a)-(c), and Tex. Bus & Commerce Code §17.50.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Plaintiffs have a judgment against Defendant for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

**RAIZNER SLANIA, LLP**

/s/ *Jeffrey L. Raizner*
JEFFREY L. RAIZNER
Attorney-in-Charge
State Bar No. 00784806
2402 Dunlavy Street
Houston, Texas 77006
Phone: 713.554.9099
Fax: 713.554-9098
jraizner@raiznerlaw.com

13

*Of Counsel*:

ANDREW P. SLANIA
State Bar No. 24056338
AMY B. HARGIS
State Bar No. 24078630
BEN WICKERT
State Bar No. 24066290
efile@raiznerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Phone: 713.554.9099
Fax: 713.554-9098
**ATTORNEYS FOR PLAINTIFFS**

## JURY DEMAND

*Plaintiffs hereby demand a trial by jury, a right enshrined in the Constitution of the United States of America and the State of Texas and preserved by the sacrifices of many. The necessary jury fee has been paid.*

/s/ *Jeffrey L. Raizner*
JEFFREY L. RAIZNER